## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| **LISA AGUILAR, EDGAR CASTRO, JORGE GUILLEN, JASON JOHNSON, VERONICA HERNANDEZ, and ARLENE DUNGAN,** ) ) ) ) ) ) | |
| Individually, and on Behalf of All Others Similarly Situated, ) ) | Case No. _____ |
| **Plaintiffs**, ) ) | **JURY DEMANDED** |
| v. ) ) | |
| **MANAGEMENT & TRAINING CORPORATION**, 500 N. Marketplace Drive Centerville, UT 84014, ) ) ) ) ) | |
| **Defendant**. ) ) ) | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs, Lisa Aguilar, Edgar Castro, Jorge Guillen, Jason Johnson, Veronica Hernandez and Arlene Dungan (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows against Defendant, Management & Training Corporation ("MTC"):

1. Plaintiffs are Correctional Officers employed by MTC at various prison facilities across the United States.[1] They bring this collective and class action complaint on behalf of themselves and other similarly situated Correctional Officers against MTC, to recover compensation for mandatory pre- and post-shift duties performed at the direction of and for the benefit of MTC without compensation at those facilities.

2. Plaintiffs' and the Correctional Officers' pre- and post-shift duties, discussed in more detail below, are critical to the safety and security of MTC's facilities. They are performed in close proximity to inmates and detainees, and as a result, Plaintiffs are required to remain vigilant and respond to emergencies for the duration of the pre- and post-shift duties.

3. Plaintiffs' claims are for unpaid wages, overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to: (a) the Fair Labor Standard Act of 1938 (as amended) ("FLSA"), 29 U.S.C. §§ 201, *et seq*., the Portal to Portal Act, ("PPA"), 29 U.S.C. § 251 *et seq*. as amended; (b) the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. §§ 50-4-22 *et seq*; and (c) the unjust enrichment laws of New Mexico, Texas and Mississippi.

---

[1] The term "Correctional Officers" refers to members of the FLSA Collective and Classes defined below.

4.      Plaintiffs seek to certify this as a collective action under the FLSA and, where applicable, as a class action for state law violations so that other similarly situated employees of MTC may join in to collect the unpaid overtime and wages MTC owes them.

## PARTIES

5.      Plaintiff Lisa Aguilar ("Aguilar") resides in Anthony, Texas and was employed by MTC from as a Correctional Officer at the Otero County Processing Center in Chaparral, New Mexico.

6.      Plaintiff Edgar Castro ("Castro") resides in Anthony, New Mexico and was employed by MTC as a Correctional Officer at the Otero County Processing Center in Chaparral, New Mexico.

7.      Plaintiff Jorge Guillen ("Guillen") resides in El Paso, Texas and was employed by MTC as a Correctional Officer at the Otero County Processing Center in Chaparral, New Mexico.

8.      Plaintiff Jason Johnson ("Johnson") resides in Fulton County, Arkansas and was employed by MTC from May 2018 to August 2019 as a Correctional Officer at the Wilkinson County Correctional Center in Woodsville, Mississippi.

9.      Plaintiff Veronica Hernandez ("Hernandez") resides in New Braunfels, Texas and was employed by MTC from 2012 through November 2018 as a Correctional Officer at the Kyle Correctional Center in Kyle Texas.

10.     Plaintiff Arlene Dungan ("Dungan") resides in El Paso, Texas and was employed by MTC as a Correctional Officer at the Otero County Processing Center in Chaparral, New Mexico.

11.     MTC is a Delaware corporation that is headquartered in Centerville, Utah. It contracts with various federal, state, county, and local governments to operate and provide services at correctional, detention, and processing facilities throughout the United States.

### JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

13.     This Court has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332 because Plaintiffs and MTC are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     This Court also has supplemental jurisdiction over the additional state-law claims pursuant to 28 U.S.C. § 1367(a).

15.     This Court has general personal jurisdiction over MTC because it has its principal place of business in Utah.

16.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and (d) because MTC is headquartered in this District.

## COLLECTIVE ACTION ALLEGATIONS

17.    Plaintiffs bring their FLSA claims individually and as a collective action, pursuant to 29 U.S.S. § 216(b), seeking monetary damages on behalf of the following class (the "FLSA Collective"):

> All current and former non-exempt, hourly-paid employees of Defendant who worked as correctional officers at MTC correctional, detention, and processing facilities in the United States at any time from three years before filing this Complaint to the present.

18.    Plaintiffs have consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b), and their consent forms are attached as Exhibit A. As this case proceeds, it is likely that additional individuals will file consent forms and join as "opt-in" plaintiffs.

19.    Plaintiffs and the FLSA Collective members are similarly situated employees that have performed the same or similar work in the provision of services to MTC.

20.    MTC's patterns, practices, and policies complained of herein were and continue to be will violations of the FLSA affecting Plaintiffs and the FLSA Collective members.

21.    Plaintiffs and the FLSA Collective members are victims of a uniform compensation policy. MTC's failure to pay Plaintiffs and the FLSA Collective Members for all hours worked and overtime compensation at the rates required by the FLSA results from generally applicable policies and practices of MTC and does

not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

22.     All of the FLSA Collective Members – regardless of their specific job titles, precise job requirements, rates of pay, specific pre and post shift work required, policies and procedures specific to a MTC client, or job locations – are entitled to be paid for all hours worked and at the proper overtime rate for all hours worked in excess of forty (40) hours per workweek.  The specific job titles, precise job requirements and pre- and post-shift duties of the FLSA Collective Member do not prevent collective treatment.

23.     Thus, Plaintiffs' experiences are typical of the experience of the FLSA Collective Members.

24.     The damages of the FLSA Collective Members will not be individual in nature and will be provable in a classwide manner.

25.     Absent a collective action, many of the FLSA Collective Members likely will not obtain redress for their wage loss damages, and MTC will retain the proceeds of its violations.

26.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the collective action and provide for judicial consistency.

27.     There are many similarly-situated current and former employees of MTC who—in violation of the FLSA—have been underpaid, in that they have not received all overtime compensation to which they are legally entitled, and who would benefit from issuance of Court-supervised notice of this lawsuit and the opportunity to join the lawsuit. Thus, notice should be sent to FLSA Collective members pursuant to 29 U.S.C. § 216(b).

28.     The similarly-situated FLSA Collective Members are known to MTC, are readily-identifiable, and can be located through MTC's records.

## CLASS ACTION ALLEGATIONS

29.     Plaintiffs Aguilar, Castro, Guillen and Dungan (the "New Mexico Plaintiffs") bring their NMMWA, unjust enrichment, breach of contract, and quantum meruit claims individually and as a class action, pursuant to Rule 23, seeking monetary damages and equitable relief on behalf of the following class (the "New Mexico Class"):

> All current and former non-exempt, hourly-paid employees of Defendant who worked as correctional officers at MTC correctional, detention, and processing facilities in the State of New Mexico at any time from six years before filing of this case to the present.

30.     Plaintiff Hernandez brings her unjust enrichment, breach of contract, and quantum meruit claims individually and as a class action, pursuant to Rule 23, seeking monetary damages on behalf of the following class (the "Texas Class"):

> All current and former non-exempt, hourly-paid employees of Defendant who worked as correctional officers at MTC correctional, detention, and processing facilities in the State of Texas at any time from four years before filing of this case to the present.

31.     Plaintiff Johnson brings his unjust enrichment, breach of contract and quantum meruit claims individually and as a class action, pursuant to Rule 23, seeking monetary damages on behalf of the following class (the "Mississippi Class"):

> All current and former non-exempt, hourly-paid employees of Defendant who worked as correctional officers at MTC correctional, detention, and processing facilities in the State of Mississippi at any time from three years before filing of this case to the present.

32.     The New Mexico Class, Texas Class, and Mississippi Class are collectively referred to as the "Class" or "Classes". Excluded from the Classes are MTC, its parent companies, subsidiaries, affiliates, franchisees, officers, executives, and employees; states and their subdivisions, agencies and instrumentalities; any judicial officer presiding over this matter and his or her staff; all entities whose principal place of business is outside of the United States; and all persons who are not residents or citizens of the United States.

33.     While Plaintiffs do not know the exact number of the members of the Classes, there are (at least) hundreds of members in each.

34.     Plaintiffs and the Class members are paid in the same manner. Each of them is required to arrive at work early enough to complete their pre-shift duties,

and none of them are paid for that work. Each is also required to remain at their post until relief arrives, and to complete various other post-shift duties before leaving their assigned facility each day. Similarly, none of them are paid for their post-shift duties or for the pre- or post-shift time that they are required to be available to respond to emergencies.

35.     Common questions of law and fact exist as to all members of the Classes. Such questions of law and fact common to the Classes include, but are not limited to:

        a.     Whether Plaintiffs and the Class members perform pre- and post-shift activities without compensation;

        b.     Whether the pre- and post-shift duties performed by the New Mexico Plaintiffs and the New Mexico Class members are compensable under the NMMWA;

        c.     Whether Plaintiffs and the Class members were required to remain vigilant and respond to emergencies while performing pre- and post-shift duties;

        d.     Whether MTC knew or had reason to know that Plaintiffs and the Class members performed work without compensation;

        e.     Whether MTC is obligated to compensate Plaintiffs for damages for not paying for time spent performing pre and post shift activities;

f. Whether MTC maintained accurate records of time worked by Plaintiffs and the Class members;

g. Whether MTC's refusal to compensate the New Mexico Plaintiffs and the New Mexico Class members for pre- and post-shift duties violated the NMMWA;

h. Whether MTC entered into a contract with Plaintiffs and the Class members to pay a certain hourly rate for time worked;

i. Whether the Class members conferred benefits on MTC when they performed their pre- and post-shift duties;

j. Whether MTC retained the benefits conferred on it by the Class members; and

k. Whether MTC was unjustly enriched by Plaintiffs and the Class members.

36. The Class members are so numerous and geographically dispersed that joinder of all members is impracticable. Although the precise number of such individuals, organizations, and businesses is currently unknown, Plaintiffs believe that the number of Class members is, at minimum, in the thousands, and that the members reside or are located across the United States.

37.     Plaintiffs' claims are typical of those of the Class they seek to represent. Plaintiffs, like all other Class members, have been injured by MTC's refusal to compensate them for pre- and post-shift duties.

38.     Plaintiffs are more than adequate representatives of the Classes and their chosen class counsel (the undersigned) are more than adequate attorneys. Plaintiffs have the incentive, and are committed to prosecuting this action, for the benefit of the Classes. Plaintiffs have no interests that are antagonistic to those of the Classes. Plaintiffs have retained counsel highly experienced in wage and hour and class action litigation.

39.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because MTC has acted and refused to act on grounds that apply generally to the Classes, and final injunctive and declaratory relief is appropriate, and necessary, with respect to the Classes as a whole.

40.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual Class members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitious litigation.

41.     Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum

simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as that asserted in this Complaint. Plaintiffs are aware of no difficulties that would render this case unmanageable.

42.     Plaintiffs and the Class have all suffered, and will continue to suffer, injury and damages as a result of MTC unlawful refusal to compensate them for pre- and post-shift duties.

## STATEMENT OF FACTS

43.     Plaintiffs and the Correctional Officers work in MTC facilities housing incarcerated prisoners and immigrants facing deportation. They are constantly facing stressful challenges including managing difficult inmates and detainees, working within strict security regulations, dealing with overcrowded facilities, and understanding the complex legal and public safety considerations related to incarcerated populations. Working closely with dangerous inmates and detainees within the security envelope of the MTC facilities is an essential function of Plaintiffs' and the Correctional Officers' jobs.

44.     Plaintiffs and the Correctional Officers are responsible for the custody and discipline of inmates and detainees. Among other duties, Plaintiffs and the Correctional Officers: search for contraband and provide security; count, feed, and

supervise inmates and detainees in housing, work, and other areas; and prepare and maintain records, forms, and reports; guard and supervise inmates and detainees, and maintain the custody and discipline of inmates and detainees. Further, preventing weapons or other contraband from entering the prison, by way of the security screening, is an intrinsic element of Plaintiffs' and the Correctional Officers' security work.

45.     In addition to the hours worked during their scheduled shifts, Plaintiffs and the Correctional Officers worked approximately 2.5 hours to 4 hours and 10 minutes "off-the-clock" per week and have not been compensated for that time.

46.     MTC enforces uniform, company-wide policies and practices that require Plaintiffs and the Correctional Officers to work in excess of their scheduled shifts in MTC facilities where they serve throughout the United States.

47.     Upon entering the facilities where they work, and prior to proceeding to their precise work assignment posts, Plaintiffs and the Correctional Officers must complete the following pre-shift duties before they begin their shifts:

     a.     Initially undergo a security screening, including passing through metal detectors, get additionally searched and wait for others to be searched, and have their bags searched to ensure that weapons or contraband are not entering the facility;

b.      In what MTC calls a "pre[-]shift briefing," some Correctional Officers receive post assignments and instructions from a supervisor, and officers sometimes receive paperwork or additional information about their post for that day;

c.      Proceed to an equipment area where they must line up, sign in, and identify themselves to ensure safety in the correctional environment.

d.      Obtain any necessary keys (from a fingerprint-activated box or other limited access control device) so they can have access to restricted areas, and collect any equipment they need for the day, such as handcuffs, a radio, or pepper spray, from the prison's inventory-control system, - all to enable them to escort prisoners, respond to emergencies as needed and otherwise work as corrections officers;

e.      Pass through and an air lock (or air locks or other security gates) to ensure that Plaintiffs and the Correctional Officers can work safely in the correctional environment;

f.      Some locations require identification in the airlock or other places and some correctional institutions require other security procedures such as finger scanning, optical scanning or handwritten sign in logs; and

g.      Walk to their assigned posts, where they receive a "pass[-]down briefing" from the officer leaving the post.

48.     Additionally, upon leaving their work assignment posts, Plaintiffs and the Correctional Officers must complete the following post-shift duties (largely the same as the pre-shift but in reverse order, which are required job tasks prior to leaving the facility grounds):

      a.      Secure inmates and detainees or other materials;

      b.      Provide a pass-down briefing to an incoming officer;

      c.      Walk back from their assigned work post;

      d.      Pass through the air lock, other security gates and/or other security;

      e.      Return their keys and equipment to the fingerprint-activated box and the prison's inventory-control system; and

      f.      Retrieve their I.D.s and sign-out.

49.     MTC requires Plaintiffs and the Correctional Officers to perform the above pre- and post-shift duties. Plaintiffs and the Correctional Officers use keys to guard the inmates and detainees and to lock and unlock doors to ensure security; use radios to communicate with officers at their posts and to give them directions and instructions throughout the day; and use hand restraints and pepper spray as both a deterrent and if necessary, to control unruly inmates and detainees.

50.     MTC requires Plaintiffs and all Correctional Officers to be on duty and to respond to inmate incidents and other emergencies at all times that they are

anywhere in a facility operated by MTC.  That requirement means that Plaintiffs and all Correctional Officers are on duty and performing compensable work throughout the time they are performing pre- and post-shift duties.

51.     Shift change time, when pre- and post-shift activity occurs, is a crucial time where inmates more often pass contraband, attack each other and commit other unlawful and dangerous activities.  Detainees require similar supervision during this crucial time, although their detention may be for reasons related to immigration enforcement.

52.     Plaintiffs and the Correctional Officers are off-the-clock and uncompensated for the time that they spend completing their pre- and post-shift duties, which can take between 15 and 25 minutes, or more, daily at the beginning and end of their shifts. They are not compensated at the straight time rate for this time, nor are they paid overtime compensation for this time when they have worked more than 40 hours in a workweek or more than the number of hours that qualify for overtime pay under the FLSA and NMMWA.

53.     The pre- and post-shift duties described above are integral and indispensable to the principal activities of Plaintiffs and the Correctional Officers, who all provide security in correctional environments.

54.     Plaintiffs and the Correctional Officers have the responsibility of providing security to inmates and detainees while dealing with the reality of working

in a correctional or detention facility, including maintaining the safety and security of inmates and detainees, visitors, and other prison personnel at all times.

55.    MTC has employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiffs.

56.    Although there may be some minor variation in the order and duration of the pre- and post- shift duties amongst different facilities, the variations would go to damages and not collective action and/or class action certification.

57.    MTC has not and will not pay Plaintiffs and the Correctional Officers for their work until they are present at their precise work assignment posts (and sometimes clock in), although they must be present at the correctional facility where they are employed both before and after their shifts to complete the pre- and post-shift duties that necessary, integral, and indispensable to their employment and their employer as described and specified above.

58.    MTC typically pays Plaintiffs and the Correctional Officers based on shift time rather than clock time, so it fails to pay them for the time they devote to pre- and post-shift duties such as undergoing the security screening, receiving the pre-shift briefing, checking keys and equipment in and out, walking to and from post, and conducting pass-down briefings.

59.    As a result of MTC's company-wide policies and practices requiring Plaintiffs and the Correction Officers to perform these pre- and post-shift duties off

the clock, Plaintiffs and the Correctional Officers were not compensated for all hours worked, including, but not limited to, all hour worked in excess of forty (40) hours in a workweek or the number of hours that qualified for overtime pay under the FLSA and NMMWA.

60.     The time spent on the listed tasks both before the shifts begin and after the end of the shift is not *de minimis* and is compensable as either straight time under Utah law where an individual has worked fewer than 40 hours in a workweek or as overtime under the FLSA or the NMMWA.  That time should be included in any calculation of the time worked during a work period to determine whether compensation for straight time is owed and to determine whether and employee is entitled to overtime compensation.

61.     MTC is aware of its obligation to pay Plaintiffs and the Correctional Officers for all hours worked, including pre- and post- shift activity, but failed to do so.

62.     MTC's pay policies and practices are unlawful because MTC did not pay Plaintiffs and the Correctional Officers for all hours worked and overtime pay as required by the FLSA and the NMMWA.

## CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (On Behalf of the FLSA Collective)

63.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

64.    At all relevant times, MTC has been a covered employer within the meaning of Section (d) of the FLSA, 29 U.S.C. § 203(d) engaging in interstate commerce.

65.    Plaintiffs and the FLSA Collective members are non-exempt hourly employees of MTC who work specifically as Correctional Officers subject to MTC's common practice, policy, or plan of willfully and unlawfully failing to compensate them for off-the-clock pre- and post-shift job duties under the FLSA.

66.    The time spent by Plaintiffs and the FLSA Collective members on pre- and post-shift duties was not and is not "preliminary" or "postliminary" within the meaning of the Portal-to-Portal Act.

67.    The time spent by Plaintiffs and the FLSA Collective members on pre- and post-shift duties was and is compensable "work" within the meaning of the FLSA.

68.    MTC failed to maintain accurate records of all time worked by Plaintiffs and the FLSA Collective, as required by the FLSA.

69.     MTC knowingly and willingly suffered and permitted Plaintiffs and the FLSA Collective members to perform pre- and post-shift duties without compensation.

70.     MTC violated 29 U.S.C. § 207(a) by failing to pay Plaintiffs and FLSA Collective member one and one-half their regular rate of pay for all the time spent performing their pre- and post-shift duties.

71.     MTC knew or should have known it its practice and policy of requiring Plaintiffs and the FLSA Collective members to perform pre- and post-shift duties without compensation was unlawful and in violation of the FLSA.

72.     MTC knowingly, willfully, and with reckless disregard carried out an unlawful pattern of failing to pay Plaintiffs and the FLSA Collective members for all time spent on pre- and post-shift duties.

73.     The decision and practice by MTC to not pay Plaintiffs and the FLSA Collective members for time spent on pre- and post-shift duties described above was neither reasonable nor in good faith.

74.     As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by MTC from Plaintiffs and the FLSA Collective members for the pre- and post-shift duties described above. Accordingly. MTC is liable under 29. U.S.C. § 216(b), together with an additional amount as liquidated damages.

75.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and the FLSA Collective members have suffered and will continue to suffer a loss of income and other damages. Plaintiffs and the FLSA Collective are entitled to and hereby seek overtime, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs incurred in connection with this claim.

## COUNT II
## FAILURE TO PAY WAGES AND OVERTIME UNDER THE NMMWA
### (On Behalf of the New Mexico Class)

76.     Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

77.     MTC is an employer within the definition of the NMMWA.

78.     The New Mexico Plaintiffs and the New Mexico Class members are non-exempt hourly employees of MTC, within the meaning of the NMMWA, who work specifically as Correctional Officers subject to MTC's common practice, policy, or plan of willfully and unlawfully failing to compensate them for off-the-clock pre- and post-shift job duties under the NMMWA.

79.     The NMMWA requires MTC to pay the New Mexico Plaintiffs and the New Mexico Class members at a rate of one and a half their regular wage rate for all hours worked in excess of 40 hours per 7-day workweek.

80.     The NNMWA also requires payment of wages for all hours worked

81.    The time spent by the New Mexico Plaintiffs and the New Mexico Class members on pre- and post-shift duties was and is compensable "work" within the meaning of the NMMWA.

82.    MTC knowingly and willingly suffered and permitted the New Mexico Plaintiffs and the New Mexico Class members to perform pre- and post-shift duties without compensation.

83.    MTC has violated the NMMWA by failing to pay the New Mexico Plaintiffs and the New Mexico Class members for pre- and post-shift duties.

84.    MTC knew or should have known it its practice and policy of requiring the New Mexico Plaintiffs and the New Mexico Class members to perform pre- and post-shift duties without compensation was unlawful and in violation of the NMMWA.

85.    MTC knowingly, willfully, and with reckless disregard carried out an unlawful pattern of failing to pay the New Mexico Plaintiffs and the New Mexico Class members for all time spent on pre- and post-shift duties.

86.    MTC is liable to the New Mexico Plaintiffs and the New Mexico Class members for all unpaid and underpaid wages and overtime earned for the performance of their pre- and post-shift duties.

87.    The decision and practice by MTC to not pay the New Mexico Plaintiffs and the New Mexico Class members for time spent on pre- and post-shift duties described above was neither reasonable nor in good faith.

88.    The New Mexico Plaintiffs and the New Mexico Class members are entitled to recover an award of liquidated damages in an amount equal to twice amount of unpaid or underpaid wages and overtime**.**

89.    The New Mexico Plaintiffs and the New Mexico Class members are entitled to damages equal to the unpaid and underpaid wages and overtime pay earned within the applicable time period preceding the filing of the Complaint, plus periods of equitable tolling, because MTC acted willfully and knew or should have known their conduct was prohibited by NMMWA and/or showed reckless disregard for whether MTC's conduct was prohibited by that statute.

90.    As a result of the aforesaid willful violations of NMMWA, wages and overtime compensation have been unlawfully withheld by MTC from the New Mexico Plaintiffs and the New Mexico Class members for the pre- and post-shift duties described above.

91.    As a direct and proximate result of Defendant's unlawful conduct, the New Mexico Plaintiffs and the New Mexico Class members have suffered and will continue to suffer a loss of income and other damages. The New Mexico Plaintiffs and the New Mexico Class members are entitled to and hereby week unpaid wages

and overtime, liquidated damages, pre- and post-judgment interest, injunctive and declaratory relief, attorneys' fees, and costs incurred in connection with this claim.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of the Classes)

92.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

93.    Plaintiffs and the Classes conferred substantial benefits on MTC by performing their pre- and post-shift duties above in furtherance of their principal job duties at MTC's facilities. MTC knowingly and willingly accepted and enjoyed such benefits.

94.    MTC appreciated the fact of the pre- and post-shift job duties by retaining the benefits of the labor provided by Plaintiffs and the Classes while failing to compensate them for that time at the agreed upon rate of pay.

95.    MTC has thereby been unjustly enriched and Plaintiffs and the Classes have been damaged.

96.    Plaintiffs and the Classes are entitled to damages equal to all unpaid wages and work time due. This count does not apply to MTC's failure to properly pay Plaintiff and Classes at the premium rate for hours worked in excess of forty (40) per week and is limited to claims for unpaid straight-time wages.

97.    MTC either knew or should have known that Plaintiffs and the Classes were performing compensable work, without compensation, that was integral and indispensable to the safe and secure operation of its facilities. As such, it would be inequitable for MTC to retain the benefit of Plaintiffs' and the Classes' pre- and post-shift duties under these circumstances.

98.    MTC's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for MTC to retain the benefits of Plaintiffs' and the Classes' work without payment of the value to Plaintiffs and the Classes.

99.    Plaintiffs and the Classes are entitled to damages equal to all unpaid wages and work time due. This count does not apply to MTC's failure to properly pay Plaintiff and Classes at the premium rate for hours worked in excess of forty (40) per week and is limited to claims for unpaid straight-time wages.

100.   Plaintiffs and the Classes are entitled to recover from MTC all amounts owed for the performance of their pre- and post-shift duties, including unpaid wages, pre- and post-shift interest, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT IV
## BREACH OF CONTRACT
### (On Behalf of the Classes)

101.   Plaintiffs and the Classes incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

102.   MTC agreed to pay Plaintiffs and the Classes an hourly wage, and Plaintiffs and the Classes agreed to work for that wage, but MTC did not pay them that promised wage for performing pre- and post-shift activities.

103.   To the extent Plaintiffs and the Classes worked off-the-clock without actually exceeding 40 hours per week, they are owed their regular hourly rate for those work hours.

104.   Accordingly, Plaintiffs and the Classes make this claim pursuant to state contract and common law payment of wages for time actually worked but not paid for by MTC under 40 hours per week.

105.   The damages sought for breach of contract herein fall within the jurisdictional limits of the Court.

106.   Plaintiffs and the Classes are entitled to the recovery of attorneys' fees and costs with respect to this claim for regular pay for hours worked.

107.   All allegations stated in connection with this common law claim for payment of hours worked apply to the Classes on the same basis as named Plaintiffs.

## COUNT V
## QUANTUM MERUIT
### (On Behalf of the Classes)

108.   Plaintiffs and the Classes incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

109.   Plaintiffs and the Classes conferred substantial benefits and valuable services on MTC by performing their pre- and post-shift duties above in furtherance of their principal job duties at MTC's facilities.

110.   MTC knowingly and willingly accepted and enjoyed such benefits.

111.   MTC appreciated the fact of the pre- and post-shift job duties by retaining the benefits of the labor provided by Plaintiffs and the Classes while failing to compensate them for that time at the agreed upon rate of pay.

112.   MTC knowingly and willingly accepted and enjoyed such benefits under circumstances that reasonably notified Plaintiffs and the Classes that they expected to be paid for their pre- and post-shift activities.

113.   MTC has thereby been unjustly enriched and Plaintiffs and the Classes have been damaged.

114.   Plaintiffs and the Classes are entitled to damages equal to all unpaid wages and work time due.  This Count does not apply to MTC's failure to properly pay Plaintiff and the Classes at the premium rate for hours worked in excess of forty (40) per week and is limited to claims for unpaid straight-time wages.

115.   Plaintiffs and the Classes are entitled to recover from MTC all amounts owed for the performance of their pre- and post-shift duties, including unpaid wages, pre- and post-shift interest, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## Jury Demand

116.   Plaintiffs, the FLSA Collective members, and the Class members demand a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against MTC as to each and every count, including:

A.     An order conditionally and finally certifying the proposed FLSA Collective pursuant to 29 U.S.C. § 216(b);

B.     An order designating Plaintiffs as the representatives of the FLSA Collective;

C.     An order certifying the Classes pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3);

D.     An order designating Plaintiffs Aguilar, Castro, Guillen, and Dungan as the representatives of the New Mexico Class;

E.     An order designating Plaintiff Hernandez as the representative of the Texas Class;

F.     An order designating Plaintiff Johnson as the representative of the Mississippi Class;

G.     An order designating the firm of Burger Law as class counsel;

H.     An order enjoining MTC from refusing to compensate the Plaintiffs, the FLSA Collective, and the Classes for pre- and pre-shift duties in the future;

I.     A verdict and judgment for all unpaid and underpaid wages and overtime owed to Plaintiffs, the FLSA Collective, and the Classes;

J.     A verdict and judgment for all actual damages sustained by Plaintiffs, the FLSA Collective, and the Classes;

K.     A verdict and judgment for liquidated damages equaling the unpaid and underpaid wages and overtime owed to Plaintiffs and the FLSA Collective members;

L.     A verdict and judgment for liquidated damages equaling double the unpaid and underpaid wages overtime owed to the New Mexico Plaintiffs and the New Mexico Class members;

M.     A judgment for pre-judgment and post-judgment interest at the applicable legal rate;

N.     Attorneys' fees, costs, and expenses incurred by Plaintiffs and the Correctional Officers in this litigation, including pre-suit investigation; and

O.     Any such other and further relief, in law and equity, as the Court may deem just and proper.

Dated:  May _____, 2020                     Respectfully submitted,

                                            **WRONA LAW**

                                            */s/ Bret M. Hanna*                          
                                            Bret M. Hanna
                                            1745 Sidewinder Drive
                                            Park City, Utah  84060
                                            P: (435) 649-2525
                                            F:  (435) 649-5959
                                            Email: hanna@wdlawfirm.com

                                            **BURGER LAW FIRM, LLC**
                                            Gary K. Burger (*pro hac vice* to be filed)
                                            500 N. Broadway, Suite 1860
                                            St. Louis, MO 63102
                                            P:  (314) 542-2222
                                            F:  (314) 542-2229
                                            Email: gary@burgerlaw.com

                                            ***Attorneys for Plaintiffs***